UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

MARIO MASIC and BETHANY MASIC,    )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )        Case No. 1:24-cv-18-GWC
                                  )
TOWN OF FRANKLINVILLE, NEW        )
YORK,                             )
                                  )
        Defendant.                )

## ORDER ON MOTION TO DISMISS
### (Doc. 7)

Plaintiffs Mario Masic ("Mr. Masic") and Bethany Masic ("Ms. Masic") bring this action against Defendant Town of Franklinville, New York ("Town") alleging violations of the federal and New York State Constitutions as well as federal and state law. (*See* Doc. 1-1.) These claims arise from the actions of Town employees between 2017 and 2023. The Masics allege that Town employees harassed them, repeatedly trespassed on their land, and arbitrarily enforced Town codes and zoning laws against them out of personal animus. Currently pending is the Town's Motion to Dismiss the Complaint (Doc. 7) and the Plaintiffs' Motion to Amend the Complaint, Motion to Remand to State Court, and Motion to File a Late Notice of Claim (Doc. 10). The parties have completed briefing on the Motion to Dismiss, and the court heard oral argument on July 28, 2025.

### Factual Background

The court draws the following facts from the Complaint. As required on a motion to dismiss, the court accepts these facts as true for the purposes of this opinion. *Trs. of Upstate N.Y. Eng'rs. Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

In 2017, Mr. Masic and Ms. Masic decided to move from Leroy, New York to property they had purchased in Franklinville, New York. (Doc. 1-1 ¶¶ 7, 11–12.) They planned to build a home on their property at 7823 Tug Hill Road and a barn on their property at 7906 Tug Hill Road. (*Id.* ¶ 12.) Mr. Masic and Ms. Masic breed dogs, and they planned to continue their breeding operation in Franklinville. (*Id.* ¶ 13.)

The Masics' move to Franklinville was ill-fated. Two of their neighbors, Rick and Gail Fantrazzo, announced to the Masics in November 2017 that the Masics were not wanted and that they would do anything necessary to get the Masics to leave Franklinville. (*Id.* ¶ 22.)

The Fantrazzos are good friends with Kay Farrington and Lonnie Farrington. (*Id.* ¶ 23.) During all relevant times, Kay Farrington was Franklinville's Dog Control Officer, and Lonnie Farrington was Franklinville's Code Enforcement Officer. (*Id.* ¶ 13.) The Farringtons, along with Town Supervisor Lorrie Fisher and several other Town officials, engaged in a lengthy campaign against the Masics in an attempt to drive them out of town. This campaign began in early 2017 and largely ended in early 2023, by which time most of the Town officials engaged in the conduct had voluntarily or involuntarily left their employment with the Town. (*See generally* Doc. 1-1.)

The offending behavior falls generally into three categories: (1) unwanted, frequent, and sometimes threatening contact with the Masics, including trespassing on and photographing their properties; (2) trying to get the Masics to comply with or citing the Masics for violations of nonexistent or inapplicable town codes, zoning requirements, and permitting requirements; and (3) attempting to ruin the Masics' reputation. The primary points of contention involve the Masics' barn, their dogs, the construction of their home, their compost pile, and the expansion of their farm.

## Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 78 (2d Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In evaluating a Rule 12(b)(6) motion, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Trs. of Upstate N.Y. Eng'rs*, 848 F.3d at 566) (internal quotation marks omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (alteration in original) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014)).

## Analysis

Plaintiffs assert 12 causes of action against the Town. The court begins by addressing Plaintiffs' motions. The court then turns to Plaintiffs' federal causes of action and finally the state law causes of action.

## I.    Motion to Remand and Motion to File Late Notice of Claim

In their response to the Motion to Dismiss, Plaintiffs move the court to remand this case to New York state court. (Doc. 10 at 3.) The bases for the motion appears to be that (1) Plaintiffs originally filed the Complaint in state court; (2) the Town removed the case to federal court without consulting Plaintiffs; (3) most of the claims are state law claims; and (3) New York's standard for dismissal of a complaint is friendlier to Plaintiffs than the federal standard. (*Id.*)

3

"Once a case has been removed to federal court, a party may move to remand the case to state court." *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005). The party must file the motion within 30 days after the filing of the notice of removal, unless the basis of the motion is the lack of subject matter jurisdiction, in which case there is no time limit for filing the motion. 28 U.S.C. § 1447(c).

The notice of removal in this case was filed on January 3, 2024. (Doc. 1.) Plaintiffs filed their response to the Motion to Dismiss, which includes their motion for remand, on June 9, 2024, far more than 30 days after the notice of removal. (Doc. 10.) The motion is not based on subject matter jurisdiction.

Plaintiffs' response to the Motion to Dismiss also seeks leave to file a late notice of claim, a matter of New York state law. Federal courts lack jurisdiction to decide such motions. *See In re Dayton*, 786 F. Supp. 2d 809, 824–25 (S.D.N.Y. 2011) (federal district courts lack jurisdiction to grant an extension of time to file a late notice of claim); *MS v. Rye Neck Union Free Sch. Dist.*, No. 18-cv-8283, 2019 U.S. Dist. LEXIS 79377 (S.D.N.Y. May 10, 2019) (same) (collecting cases); *Brown v. Metropolitan Trans. Auth.*, 717 F. Supp. 257, 259–60 (S.D.N.Y. 1989) (Section 50-e "is explicit about which court can hear an application for the filing of a late notice of claim").

In *Arnold v. Town of Camillus*, No. 5:20-cv-1364, at 7 (N.D.N.Y. Feb. 1, 2021), Dkt. No. 15, the court held that, because the plaintiff had moved to file a late notice of claim, her state law claims subject to the notice of claim requirement had to be remanded. Here, because the court need not reach the motion to file the late notice of claim, it provides no basis for remanding the case to state court. The court therefore DENIES Plaintiffs' Motion to Remand. The Motion to File a Late Notice of Claim is MOOT.

4

## II.    Motion to File an Amended Complaint

Plaintiffs' response to the Motion to Dismiss includes a request for leave to file an amended complaint. A court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a).

Plaintiffs have failed to comply with Local Rule 15, which requires them to submit a proposed amended complaint along with their motion to amend. The proposed amendment must make use of the "redline" function or a similar tool to make the changes to the complaint obvious. L.R. 15. The court cannot properly consider whether the motion should be granted without reviewing a proposed amended complaint. The court will therefore DENY the Motion to Amend the Complaint without prejudice.

## III.    Federal Causes of Action

The Town moves to dismiss Plaintiffs' federal causes of action on the grounds that Plaintiffs have failed to allege facts establishing municipal liability under *Monell*, that Plaintiffs have otherwise failed to state a claim on any of their causes of action, that Plaintiffs' claims are time-barred, and that Plaintiffs have failed to exhaust their administrative remedies. (*See generally* Doc. 7-1.) The court addresses these arguments as they pertain to each of the individual causes of action.

### A.    Equal Protection Clause

#### 1.    Plaintiffs Have Stated a Claim

Plaintiffs bring an equal protection claim on the basis that, for several years, the Town has arbitrarily and inconsistently enforced codes and regulations—whether legitimately applicable to them, inapplicable, or nonexistent—far more aggressively against Plaintiffs than against other Town residents for no reason other than personal animus. These enforcement

actions include citing Plaintiffs for failing to have a special kennel permit, conducting over 19 inspections during the construction of Plaintiffs' home, delaying the delivery of Plaintiffs' certificate of occupancy, citing Plaintiffs for having allegedly illegal agricultural "high tunnels," requiring an inspection of Plaintiffs' property to verify that it was a "real farm," citing Plaintiffs for the condition of their compost pile, requiring Plaintiffs to get permits for agricultural structures such as their barns and roadside farm stands, requiring Plaintiffs to license their dogs in Franklinville before they had moved their dogs to Franklinville, attempting to solicit complaints from neighbors about Plaintiffs' dogs, falsely telling Plaintiffs that there are required setbacks for farm animals, and attempting to illegally raise Plaintiffs' home assessment to tax them out of the Town.  (*See generally* Doc. 1-1.)

Plaintiffs' equal protection claim can proceed on either a selective enforcement theory or a "class-of-one" theory.  "To proceed under a selective enforcement theory, Plaintiffs must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [them].'"  *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)) (alteration in original).  To succeed on a class-of-one theory, Plaintiffs "need not show malice."  *Id.*  Instead, "they must plausibly allege that 'there is no rational basis for the difference in treatment,' as well as 'an extremely high degree of similarity between themselves and the person to whom they compare themselves.'"  *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); then quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

In the Motion to Dismiss, the Town focuses on the class-of-one theory and argues that the court must dismiss Plaintiffs' equal protection claim because they have "failed to allege true comparators who received favorable treatment." (Doc. 7-1 at 25.) But Plaintiffs' claims proceed primarily under a selective enforcement theory; throughout the Complaint, Plaintiffs plead facts going directly to the issue of malice and an intent to injure. And, while Plaintiffs do reference several comparators throughout the Complaint, the Town's enforcement actions against Plaintiffs were so numerous and varied that Plaintiffs would struggle to find an appropriate comparator.

First, setting aside momentarily the issue of malicious intent, Plaintiffs have made sufficient factual allegations to support the inference that the Town engaged in much more frequent enforcement against them than against other Town residents. Plaintiffs have alleged that, while the Town criminally prosecuted them for allegedly violating the special kennel permit requirement, their freedom-of-information-law request showed that "numerous [Franklinville] residents" had four or more licensed dogs (i.e., dogs of which the Town had knowledge), but none of them had ever requested or been issued a special kennel permit. (Doc. 1-1 ¶ 57.) The pleadings allege that the Town only began telling residents to acquire special kennel permits to cover up its targeted actions against Plaintiff; Town Attorney Ginger Schroder sent a text message to Julie Storts, a Franklinville resident with eight dogs, warning her that she should get a special kennel license because the Town would be "cracking down on all persons with dogs requiring licensing so it will not be discriminatory if [the Town] go[es] after [the Masics]." (*Id.* ¶ 52.) The Farringtons also texted Ms. Storts "suggesting she get a special kennel permit even though it was not required." (*Id.* ¶ 53.) But, unlike Plaintiffs, when Ms. Storts refused to get a special kennel license, she did not receive a ticket. (*Id.*)

7

Similarly, Kim Chase, a dog breeder in Franklinville with over 30 dogs, informed Plaintiffs that "she never . . . heard of or got a special kennel permit." (*Id.* ¶ 54.) When Town Supervisor Lorrie Fisher later suggested that Ms. Chase get a special kennel permit, Ms. Chase refused because she knew it was unnecessary. (*Id.*) She did not receive a ticket. Meanwhile, when the Plaintiffs received a citation for failing to get a special kennel permit, all of their dogs were licensed, and they had actually moved four of their dogs to Machias, New York, leaving only three dogs in Franklinville. (*Id.* ¶¶ 58–59.)

Plaintiffs draw similar comparisons elsewhere: whereas Town employees repeatedly told Plaintiffs they needed to get a permit to build their barn, no Town officials told resident Wallie Miller to get a permit for his barn until Plaintiffs submitted a FOIL request regarding Mr. Miller's property. (*Id.* ¶¶ 124, 127.) And, while Lonnie Farrington required 19 inspections of Plaintiffs' home while it was under construction, other homes built by the same company averaged only six inspections. (*Id.* ¶ 81.) The homebuilder, Kody Sprague, said he had never experienced such delays before and surmised that the town was deliberately harassing the Masics. (*Id.*) Mr. Sprague also reported that, although she had no authority to do so, Kay Farrington was trying to deny permits for the Masics' septic tanks. (*Id.*)

Plaintiffs have made ample factual allegations to support their claim of malicious intent. Plaintiffs have alleged that the Town's attorney, Ginger Schroder, specifically warned Julie Storts to get a special kennel permit because the Town wanted to cover up its targeted enforcement against Plaintiffs, and the Farringtons sent Storts a similar warning. Both the Farringtons and Town Supervisor Fisher wrote disparaging articles about the Masics in the local newspaper stating that the Masics do not follow the law. (*Id.* ¶¶ 66, 69.) The Farringtons and Town Supervisor Fisher trespassed on Plaintiffs' land, drove by their properties, and

photographed their land. (*Id.* ¶¶ 36, 42, 48, 67.) Kay Farrington acted out shooting Ms. Masic

when she saw her in town. (*Id.* ¶ 35.) And, in 2018, when a New York State code enforcement

officer explained to the Farringtons, Supervisor Fisher, and Court Clerk Lorretta Close that

Plaintiffs' agricultural buildings were exempt from codes, Lonnie Farrington said, "So there is

nothing else we can get [Mario Masic] on?" (*Id.* ¶ 33.)

      In addition to these allegations, Franklinville Assessor Bobbi Elderkin informed the

Masics that Town officials were plotting to get them in trouble, that Mr. Farrington and Ms.

Fisher directed Ms. Elderkin to hide paperwork that the Masics had submitted to the town, and

that Ms. Fisher had installed panic buttons in the town office and instructed Ms. Elderkin to hit

the button if she saw Mr. Masic in order "to make him look like a monster." (*Id.* ¶ 87.) Ms.

Elderkin further stated that Mr. Farrington had given her a two-page description of the inside of

the Masics' home in an attempt to raise their home assessment. (*Id.*) Ms. Elderkin also stated

that she had brought in a regional assessor to explain to the Town that the Masics' barn was

agricultural and exempt from building codes because she was too afraid to contradict them

herself. (*Id.*) Finally, Ms. Elderkin reported that Ms. Fisher had asked her to assess the Masics'

home as high as possible to try to force him out of town. (*Id.*) When Ms. Edlerkin refused, the

Town fired her in an email with the subject line "Masic/changes." (*Id.*)

      These allegations are sufficient to support the plausible inference that Town employees

engaged in selective enforcement against Plaintiffs for reasons of personal animus and malice.

### 2.    Liability Under *Monell*

      As the Supreme Court explained in *Monell v. Department of Social Services*, 436 U.S.

658, 694 (1978), a local government is only liable under § 1983 "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury." "[W]hen a subordinate

municipal official is alleged to have committed the constitutional violation, municipal liability

turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of

higher ranking officials with policymaking authority." *Amnesty Am. v. Town of West Hartford*,

361 F.3d 113, 126 (2d Cir. 2004). One "method of implicating a policymaking official through

subordinates' conduct is to show that the policymaker was aware of a subordinate's

unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions."

*Id.* "[B]ecause a single action on a policymaker's part is sufficient to create municipal policy, a

single instance of deliberate indifference to subordinates' actions can provide a basis for

municipal liability." *Id.* at 127.

　　The Town argues that, because Lonnie Farrington and Kay Farrington were, respectively,

a code enforcement officer and a dog control officer, they were not final decisionmakers or

policymakers and, in turn, the Town is not liable for any of the allegedly unlawful conduct laid

out in the Complaint. That argument ignores the involvement of Town Supervisor Lorrie Fisher

and members of the Town Board in the alleged conduct and their respective knowledge of the

Farrington's allegedly unconstitutional actions. "Town boards and town supervisors are

considered municipal policy makers for purposes of imposing § 1983 liability against a town."

*New Creation Fellowship of Buffalo v. Town of Cheektowaga, N.Y.*, No. 99-cv-460A(F),

2004 WL 1498190, at *62 (W.D.N.Y. July 2, 2004), *aff'd*, 164 F. App'x 5 (2d Cir. 2005); *see*

*also Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 305 (N.D.N.Y. 2013) ("Further, as

Town Supervisor, Bertram's acts may subject the Town to liability under *Monell*.").

　　The allegations plausibly indicate that Town Supervisor Fisher was personally involved

in the pattern of selective enforcement carried out against Plaintiffs and was, additionally, aware

10

of the misconduct of her subordinates. She instructed Town Assessor Bobbi Elderkin to hide Plaintiffs' paperwork and to artificially inflate their home assessment. (Doc. 1-1 ¶ 87.) She instructed Kim Chase to receive a special kennel permit as part of the Town's alleged plan to cover up their targeted campaign against Plaintiffs. (*Id.* ¶ 54.) Fisher also visited several of Plaintiffs' neighbors to inquire whether Plaintiffs' dogs bothered them in an attempt to solicit complaints about Plaintiffs. (*Id.* ¶ 60.) She was present when the Masics were issued a stop work order on their barn at 7823 Tug Hill Road. (*Id.* ¶ 56.) Fisher also wrote an article published in the local newspaper stating that the Plaintiffs were not following the law, seemingly in reference to their dog breeding business. (*Id.* ¶ 66.) This involvement by Fisher is sufficient to demonstrate a Town policy of selective enforcement against the Masics.

If Fisher's direct involvement were not enough, the allegations in the Complaint support the inference that Fisher was deliberately indifferent to the Farringtons' conduct. "[T]o establish *Monell* liability based on a persistent and widespread practice by a subordinate municipal employee (or employees) other than a policymaker . . . there must be sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse." *Lucente v. County of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020) (internal quotation marks and citations omitted). Here, Plaintiffs allege that they informed Fisher about the Farrington's inappropriate conduct on more than one occasion, yet Fisher never took any action on their complaints. (*Id.* ¶¶ 26, 31.) They allege that she informed a municipal employee to press her panic button if Mr. Masic went to the town office to register a complaint. (*Id.* ¶ 87.) They allege that Fisher was present at a meeting at which a New York State code enforcement officer explained that Plaintiffs' buildings were agricultural and thus exempt from codes. At the meeting, Lonnie Farrington stated, "So there is

nothing else we can get [Mario Masic] on?" (*Id.* ¶ 33.)  These allegations, combined with

Fisher's involvement in the years-long campaign against Plaintiffs, makes it plausible that Fisher

had a policy or custom of acquiescence in the Farringtons' abuse of Plaintiffs.

### 3.    Statute of Limitations

"Section 1983 does not provide a specific statute of limitations.  Thus, courts apply the

statute of limitations for personal injury actions under state law.  Section 1983 actions filed in

New York are therefore subject to a three-year statute of limitations." *Hogan v. Fischer*,

738 F.3d 509, 517 (2d Cir. 2013).  The Plaintiffs filed their Complaint in state court on

December 7, 2023.  (*See* Doc. 1-1.)  The Town therefore argues that the court should disregard

all factual allegations from before December 7, 2020.  (Doc. 7-1 at 17.)  The Town further

argues that "all Plaintiff[s'] claims accrued in 2019," so all their federal claims must be

dismissed.  (*Id.*)  Plaintiffs argue that their claim benefits from the continuing violation doctrine

and, therefore, is not time-barred.

"A Section 1983 claim does not accrue until the plaintiff 'has a complete and present

cause of action.'" *Mallet v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 126 F. 4th 125, 131

(2d Cir. 2025) (quoting *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015); *see also Wallace v.

Kato*, 549 U.S. 384, 388 (2007).  Under this test, the court begins by "identifying the specific

constitutional right alleged to have been infringed." *Id.* (quoting *McDonough v. Smith*, 588 U.S.

109, 115 (2019)).  Then, the court determines "when the plaintiff knew or had reason to know of

the injury which is the basis of his action, *i.e.*, the alleged injury which—according to the

plaintiff—amounts to an infringement of that constitutional right." *Id.* (internal quotation marks

and citations omitted).

"The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date.  It applies to claims composed of a series of separate acts that collectively constitute one unlawful practice." *Lucente*, 980 F.3d at 309 (internal citations and quotation marks omitted).  The doctrine applies to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of treatment." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)).  "To trigger the continuing violation doctrine in the context of an Equal Protection claim, a plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Id.* (internal quotation marks and citations omitted).  As it relates to *Monell* specifically, the plaintiff "will need to allege the persistence of the municipal policy and non-time-barred acts indicating the acquiescence of policy-making officials in subordinates' misconduct." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009).  Because the injury in such cases stems from a government *policy*, not just the individual acts that manifest that policy, each offensive act constitutes part of one Equal Protection claim, similar to the multiple offensive acts that make up one hostile work environment claim.

In a § 1983 action, the continuing violation doctrine has the effect of delaying "the commencement of the statute of limitations period . . . until the last discriminatory act in furtherance of [a discriminatory policy]." *Shomo*, 579 F.3d at 181.  It also allows the plaintiff to hold the defendant liable "for all acts that are part of this single claim," even those acts that occurred outside of the statutory period. *Morgan*, 536 U.S. at 118.  "It does not matter whether nothing occurred" for years, so long as one discriminatory act occurred within the statutory period and "so long as each act is part of the whole." *Id.* "Nor, if sufficient activity occurred [outside of the statutory period] to make out a claim, does it matter that the [plaintiff] knows on

13

that day that an actionable claim happened . . . ." *Id.* If another incident occurs within the statutory period, then "all incidents are still part of the same claim." *Id.* However, if the act within the statutory period "ha[s] no relation to the acts [outside the statutory period], . . . then the [plaintiff] cannot recover for the previous acts." *Id.*

As discussed above in the section on *Monell* liability, Plaintiffs have successfully pled the existence of a discriminatory government policy. They have also plausibly pled that the Town's policy of selective enforcement continued into 2022. They allege that, in April 2022, they decided to expand their farm and called 811 for approval for fence posts they planned to install. (Doc. 1-1 ¶¶ 95–96.) When the 811 representative notified the Town of Franklinville about the call, the Town informed the Fantrazzos about the Masic's plans. (*Id.* ¶ 97.) When Lonnie Farrington learned about the 811 call, he called Deputy Town Clerk Caitlyn Carson and Town Clerk Andrea Stanbro and told them the Masics were "starting their 'shit' again." (*Id.*) Shortly thereafter, the Franklinville Chief of Police called Mr. Masic and "stated he heard from [Town] [B]oard members that the Farringtons [were] going to give the Masics tickets for illegal high tunnels located at 7906 Tug Hill Rd." (*Id.* ¶ 98.) Plaintiffs were indeed cited for their high tunnels, which they maintain were not in violation of any law. (*Id.* ¶ 136.)

These allegations support a potential inference that the enforcement actions in 2022 were very much related to and a continuation of the prior pattern of selective enforcement against the Masics. Because members of the Town Board were aware that the Farringtons planned to cite the Masics for their high tunnels, these allegations would support the inference that government decisionmakers continued to be involved in the selective enforcement against Plaintiffs and thus constituted a Town policy for purposes of *Monell*. Given the close overlap in the parties involved, it is plausible that this enforcement action was a continuation of the prior policy of

selective enforcement.  This conclusion is bolstered by Lonnie Farrington's statement when

Plaintiffs made their 811 call that Plaintiffs were "starting their 'shit' again."  (*Id.* ¶ 97.)

Furthermore, a stop work order on Plaintiffs' barn, issued on or about April 26, 2018, at the

behest of then-Supervisor Fisher, remained in effect at least until the filing of the Complaint.

(*Id.* ¶¶ 56, 134.)

### 4.    Exhaustion of Administrative Remedies

The Town argues that the court must dismiss Plaintiffs' federal causes of action because

they have failed to exhaust their administrative remedies.  (Doc. 7-1 at 21.)  Plaintiffs concede

that they did not file Article 78 petitions under New York law.  (Doc. 10 at 36–37.)

"Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative

remedies."  *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (citing *Patsy v. Bd. of Regents*, 457

U.S. 496, 516 (1982)).  Instead, "exhaustion is necessary only where Congress specifically

requires it, either explicitly or implicitly."  (*Id.*)  Plaintiffs need not have exhausted their

administrative remedies before bringing their equal protection claim, so their failure to file an

Article 78 petition is not a bar to their claim.  *See John Gil Constr., Inc. v. Riverso*,

72 F. Supp. 2d 242, 251 n.13 (S.D.N.Y. 1999) (concluding that court had jurisdiction to hear

plaintiff's § 1983 equal protection claim despite the fact that plaintiff had not pursued state

administrative remedies, including Article 78 proceeding); *Hellenic Am. Neighborhood Action

Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) ("If there is a constitutional

violation, federal courts are available to hear § 1983 suits despite the availability of adequate

state procedures." (emphasis excluded)).

For the foregoing reasons, the Town's Motion to Dismiss is denied with respect to

Plaintiffs' equal protection claim.

5.    **Equal Protection Under the New York State Constitution**

Article I, Section 11 of the New York State Constitution protects the right to equal

protection under the law.  Plaintiffs allege that the Town has also violated the Equal Protection

Clause of the New York Constitution.  Because the reach of Article I, Section 11 of the New

York Constitution is "co-extensive with the federal provision," the same allegations that support

Plaintiffs' federal cause of action supports their state cause of action.  *See Edwards v. Jericho*

*Union Free Sch. Dist.*, 55 F. Supp. 3d 458, 470 (E.D.N.Y. 2014) (internal quotation marks and

citation omitted).  The Town's Motion to Dismiss is DENIED on this claim.

B.    **Unreasonable Search and Seizure**

Plaintiffs allege that the Town violated their Fourth Amendment right against

unreasonable searches and seizures, citing Lonnie Farrington's inspection of the Masics'

property on 7906 Tug Hill Road on December 7, 2017, which Mr. Farrington apparently

conducted without a warrant or consent.  (Doc. 10 at 35 (citing Doc. 1-1 ¶ 24).)  Even assuming

all of Plaintiffs' allegations of trespassing pertain to this cause of action, the claim must be

dismissed.

As discussed above, a local government is only liable under § 1983 for its own policies or

customs, not for the tortious conduct of individual employees.  *Monell*, 436 U.S. at 694.

Plaintiffs have not alleged any facts that would support the inference that a policy of illegal

searches continued into the period covered by the three-year statute of limitations.  The only

allegations of trespassing after 2019 involved only the Farringtons and their friends, no Town

decisionmakers.  (*See* Doc. 1-1 ¶ 118, 125, 138.)  The Complaint includes no allegations

suggesting that Town decisionmakers knew about these incidents or otherwise ratified them.

Without such allegations, Plaintiffs' Fourth Amendment claim is time-barred. The Town's

Motion to Dismiss is therefore GRANTED on the Fourth Amendment claim.

### C.     Procedural Due Process

Procedural "[d]ue process 'provides that certain substantive rights—life, liberty, and

property—cannot be deprived except pursuant to constitutionally adequate procedures.'"

*Hadwan v. U.S. Dep't of State*, 139 F.4th 209, 224 (2d Cir. 2025) (quoting *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). To state a claim for either procedural or

substantive due process, a plaintiff "must plausibly allege a protected liberty [or property]

interest." *Baez v. Pinker*, 673 F. App'x 50, 52 (2d Cir. 2016) (citing *Washington v. Glucksberg*,

521 U.S. 702, 721 (1997) (substantive due process); then citing *Bd. of Regents of State Colls. v.*

*Roth*, 408 U.S. 564, 571–72 (1972) (procedural due process)); *see also Hadwan*, 139 F.4th at 224

("To prevail on a procedural due process claim, [a plaintiff] must identify a constitutionally

protected property or liberty interest and demonstrate that the government has deprived him of

the interest without due process of law."); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255

(S.D.N.Y. 2006) ("To plead an unconstitutional deprivation of property, Anemone must identify

a constitutionally protected property interest that was deprived.").

The Town argues that Plaintiffs' procedural due process claim must be dismissed because

Plaintiffs have not articulated the liberty or property interest of which the Town deprived them in

this case. The court agrees. The Complaint simply states that "Plaintiffs have Fourteenth

Amendment substantive and procedural Due Process rights and Equal Protection Claims that

were, as identified above and below in this Complaint, violated and/or abridged by Defendant in

the instant case." (Doc. 1-1 ¶ 193.) Their briefing provides little clarification. There, Plaintiffs

identify instances of, from their perspective, insufficient process—the denial of their FOIL

requests, being denied the right to speak at a town meeting, and being forced to leave the Town's

office because Mr. Masic wanted to file a complaint.  (Doc. 10 at 41.)  But Plaintiffs do not

attempt to identify what liberty or property interests they were deprived of in those instances.

(*Id.*)  Plaintiffs' procedural due process claim is therefore DISMISSED.

### D.    Substantive Due Process

"In addition to 'guarantee[ing] . . . fair process,' the Fourteenth Amendment 'cover[s] a

substantive sphere . . . barring certain government actions regardless of the fairness of the

procedures used to implement them.'"  *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023)

(quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); then quoting *County of

Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)) (further internal citations and quotation marks

omitted) (alterations in original).  "In order to establish a substantive due process violation, a

plaintiff must demonstrate that (1) the plaintiff had a 'valid property interest;' and (2)

'defendants infringed on that property right in an arbitrary or irrational manner.'"  *Castanza v.

Town of Brookhaven*, 700 F. Supp. 2d 277, 291 (E.D.N.Y. 2010) (quoting *Cine SK8, Inc. v.

Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)).

### 1.    Plaintiffs Have Stated a Claim

#### a.    Deprivation of a Protected Liberty or Property Interest

The Town argues that the substantive due process claim, like the procedural due process

claim, must be dismissed because Plaintiffs have not articulated the liberty or property interest of

which the Town deprived them.  While it is true that the Complaint does not state what interest is

at stake, Plaintiffs' briefing identifies the property interest of which the Town allegedly deprived

them: "plaintiffs['] use of land, ability to do commerce, [and] ability to legally use the property

for agricultural purposes." (Doc. 10 at 42.)

"Because the U.S. Constitution generally does not create property interests, this court . . . looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine.'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007). In the context of a land-use dispute, the Second Circuit applies a "strict entitlement test" to determine if an interest in a particular land use has vested so as to give rise to a substantive due process claim:

> Where . . . the asserted interest is a government-issued license or permit, a legitimate claim of entitlement will be found to exist where, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Thus, a property interest in a license or permit largely turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, whether the authority is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met.

*Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018) (internal quotation marks and citation omitted); *see also Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) ("The Second Circuit uses a strict entitlement test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment. The entitlement test applies to claims . . . involving a local government's revocation of a land-use benefit that the plaintiffs had previously been granted." (internal quotation marks and citations omitted)).

In this case, Plaintiffs allege not that the Town *denied* them permits to which they were entitled but that the Town cited or threatened to cite Plaintiffs for violations of codes or laws that did not apply to Plaintiffs. Specifically, Plaintiffs have pled that, although local law did not require them to have a special kennel permit to house more than three dogs on their property, the Town cited them and criminally prosecuted them for violating that zoning requirement. (Doc. 1-1 ¶¶ 39, 57, 58, 78, 105.) In 2018, to avoid enforcement action by the Town, the Masics had to

move four of their seven dogs to a property in a different town. (*Id.* ¶ 40.) The Town only allowed them to return the dogs to their property in Franklinville a few months before the filing of the Complaint. (*Id.* ¶ 137.) Plaintiffs further allege that the Town issued a stop-work order on repairs to their barn at 7823 Tug Hill Road based on false accusations that that the work was not in compliance with applicable codes and regulations. (*Id.* ¶ 56.) That stop-work order remained in effect at the time that Plaintiffs filed the Complaint. (*Id.*)

The Second Circuit's decision in *Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988) illustrates how to apply the entitlement test for licenses and permits to a case such as this one, where the plaintiffs allege that the defendant tried to force them to obtain unnecessary licenses or permits. In *Brady*, the plaintiffs purchased a two-story building in the Town of Colchester, Connecticut. The Borough of Colchester, "a separate political subdivision located entirely within the boundaries of the Town of Colchester," approached the plaintiffs because it was interested in renting the first floor of the building. *Id.* at 207. The Borough of Colchester was controlled by Democrats, and the Town of Colchester was controlled by Republicans.

In their complaint, the plaintiffs alleged that Town of Colchester officials took various illegal actions to prevent them from renting the premises to the Borough of Colchester for purely political reasons. Specifically, they alleged that Town officials falsely asserted that the property had undergone a change from residential to commercial use when the plaintiffs acquired it and undertook to rent it, a change that would require plaintiffs to obtain a certificate of occupancy before leasing it; that Town officials ordered a member of the Colchester Planning and Zoning Commission ("CPZC") "never to issue a certificate of occupancy" for the building; and that members of the CPZC, "in refusing to allow them to proceed with work on the property, 'repeatedly insisted that the plaintiff comply with unnecessary, unlawful, and irrational

conditions not required of other persons owning commercial property in the same section of

Colchester.'" *Id.* at 209 (quoting Complaint at ¶ 25). Because of the Town's actions, the

plaintiffs could not use their property for commercial purposes.

 The Second Circuit held that there was "sufficient evidence to permit a finding that the

property was zoned and used commercially at the time this dispute arose," meaning that, "when

all of [the Town of Colchester's] demands were made, the[] CPZC may have had *no authority* to

declare that there had been a 'change in use' of the property and to engage in the subsequent

course of conduct that is the subject of the Bradys' challenge in this action." *Id.* at 213.

Applying the entitlement test, the Second Circuit determined that, "if in fact the property was

zoned and used commercially [before they purchased it], appellants very likely would have been

entitled to the benefit of the commercial use of their property *but for* the alleged improper

conduct of the appellees." *Id.* The court went on to say that, if the property did not undergo a

change in use, "the appellees may very well have had no discretionary authority under

Connecticut state law to interfere with the appellants' efforts to lease the premises to the

Borough or prevent work thereon, and to force them to apply for various permits and

certificates." *Id.* Thus, the plaintiffs had presented "sufficient evidence of a vested property

interest in the commercial use of their property." *Id.* at 215.

 As in *Brady*, Plaintiffs have alleged that the Town had no authority to issue the stop-work

order or to require Plaintiffs to obtain a special kennel permit and that they were already in

compliance with all relevant laws and regulations. Thus, accepting the facts alleged in the

Complaint as true, Plaintiffs, like the plaintiffs in *Brady*, "very likely would have been entitled to

the benefit of the commercial use of their property" for agriculture and dog breeding but for the

allegedly improper conduct of Town employees. *Id.* at 213. That is, the Town had "no

discretionary authority" under relevant State and local laws to interfere with Plaintiffs' desire to use the property for dog breeding and agriculture. Plaintiffs have therefore successfully identified a vested property interest in the agricultural use of their property.

### b.    Arbitrary or Irrational Deprivation of Property

"Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 259 (E.D.N.Y. 2014) (quoting *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992)). Again, *Brady* is instructive. There, the Second Circuit held that the same evidence that established the plaintiffs' vested property interest also supported a finding that the government acted arbitrarily. 863 F.2d at 215. Because the defendants "had no authority under state law to revoke appellants' building permit, to demand that Brady apply for zoning permits and certificates of occupancy, and to subject him to the overall approval process, . . . a trier of fact could conclude that there was no 'rational basis' for the CPZC's actions." *Id.* at 215–16. That conclusion was strengthened by the affirmative evidence that the defendants had acted for "indefensible reasons," in that case "impermissible political animus." *Id.* at 216.

Here, the Town likewise had no authority to require Plaintiffs to obtain a special kennel permit and to issue a stop-work order. Further, the Complaint contains ample factual allegations to support Plaintiffs' contention that the Town's employees acted out of personal animus, not for any legitimate governmental purpose. Plaintiffs have therefore successfully stated a substantive due process claim.

### 2.     Liability Under *Monell*

As with Plaintiffs' equal protection claim, Town Supervisor Lorrie Fisher's direct involvement in issuing the stop-work order and in enforcing the special kennel permit requirement against Plaintiffs exposes the Town to liability under *Monell*.

### 3.     Statute of Limitations

As with Plaintiffs' equal protection claim, the statute of limitations is three years. *Hogan*, 738 F.3d at 517.  The Town again argues that Plaintiffs' claim accrued prior to 2020 and is, therefore, time barred.  Plaintiffs respond that, because the stop-work order on their barn remains in place and that they were only allowed to bring their remaining dogs to Franklinville "in the few months immediately before this filing," their claim is not barred by the statute of limitations.  (Doc. 1-1 ¶¶ 134, 137; Doc. 10 at 33.)

Above, the court had the opportunity to discuss the normal "knew or should have known" standard for the accrual date of a § 1983 claim, as well as the continuing violation exception. Although Plaintiffs once again claim the benefit of the continuing violation doctrine, the scenario here is somewhat different.  Plaintiffs' equal protection claim concerned a series of separate acts taken under a discriminatory policy.  Here, Plaintiffs allege two initial decisions affecting their property interests—the decision to issue a stop work order and the decision to ban Plaintiffs from having more than three dogs in the absence of a special kennel license—which were followed by continuing enforcement of those original decisions.

Although these two scenarios differ in kind, courts in both instances often refer to the "continuing violation doctrine."  Indeed, "[t]he courts have had difficulty defining what a continuing violation is, resulting in case law that is 'inconsistent and confusing.'"  *Deepwells Estates Inc. v. Incorporated Village of Head of Harbor*, 973 F. Supp. 338, 346 (E.D.N.Y. 1997)

(quoting *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560 (5th Cir. 1985)).  "It is often difficult to determine whether a claimant alleges a single wrong, a series of separate acts for which the limitation period begins again for each violation, or a violation resulting from implementation of a continuing illegal policy."  *Id.*  Plaintiffs' equal protection claim falls into the third category.  Their claim of a substantive due process violation falls into one of the first two categories.  If it falls into the first category, Plaintiffs' claim is time-barred.  If it falls into the second category, it is not.

Distinguishing between claims that allege a single wrong and those that allege a continuing wrong can be difficult.  That is because "the continuing effects of past harm do not bring [a] claim within the continuing violation doctrine."  *Deepwells Estates*, 973 F. Supp. at 346 (citing *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)).  One helpful example comes from the Second Circuit's decision in *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130 (2d Cir. 2003).  In that case, the plaintiff's employer denied him a reasonable accommodation, and the plaintiff argued that, each day that the employer failed to provide a reasonable accommodation, the employer was violating the plaintiff's rights anew, thus resetting the statute of limitations.  The Second Circuit rejected the plaintiff's argument, holding that, although the plaintiff continued to feel the *effects* of the denied accommodation, the rejection of the accommodation was a discrete act that did not fall within the continuing violation doctrine.  *Id.* at 134–35.  Similarly, where plaintiffs have argued that the government's seizure of their property is a continuing violation, courts have held that the initial seizure is a discrete, unconstitutional act, whereas the government's retention of the property is merely an injurious consequence of the initial constitutional violation.  *See, e.g., Johnson v. Cullen*, 925 F. Supp. 244 (D. Del. 1996); *see also Shannon v. Recording Indus. Ass'n of Am.*, 661 F. Supp. 205, 211 (S.D. Ohio 1987).

By contrast, in *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), the plaintiff brought an Eighth Amendment claim for denial of medical care.  The court reasoned that "[e]very day that [the prison staff] prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Id.* at 318. The plaintiff had therefore been subjected to "[a] series of wrongful acts," which "create[d] a series of claims." *Id.*  Although each day of denied care was technically its own constitutional violation and its own claim, the court reasoned that it would "be unreasonable to require him, as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after each of the earlier days of deliberate indifference" and would additionally "impose an unreasonable burden on the courts." *Id.* at 319–20.  Thus, the court allowed the plaintiff to sue for pain and suffering he endured outside of the statutory period.  *Id.*

A key element in the Seventh Circuit's holding was the compounding and singular nature of the plaintiff's harm; each day that the defendants failed to treat him, his pain and suffering mounted.  That pain and suffering was one, prolonged, and growing injury.  The court contrasted the plaintiff's circumstances with cases in which "repeated events give rise to discrete injuries, as in suits for lost wages." *Id.* at 320.  As the court explained, "[i]f our plaintiff were seeking backpay for repeated acts of wage discrimination . . . , he would not be permitted to reach back to the first by suing within the limitations period for the last." *Id.*

The court in *Remigio v. Kelley*, No. 04-cv-1877, 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005) reached the same conclusion regarding a plaintiff's procedural due process claim.  There, the plaintiff alleged that the government had seized his vehicle and failed to provide him with a post-seizure hearing.  The court held that, if the plaintiff "had simply complained about the

continuing ill effects from the deprivation of his property following its seizure, the continuing

violation doctrine could not apply because [the plaintiff] would be complaining about the painful

consequences of that original act." *Id.* at *8.  Because the plaintiff instead was complaining

about the government's failure to provide him with a post-deprivation hearing, he was in fact

complaining about the government's repeated refusal, day after day, to provide him with a

hearing. *Id.* at *10.  As a result of that "continuing and incrementally increasing[ly] unlawful

conduct," the plaintiff suffered a single harm.  As in *Heard*, it would have been "unreasonable to

require [the plaintiff] to sue each day that a hearing was not held, when the days seemed to

stretch into the future without end." *Id.*

   Turning to Plaintiffs' case, *South Lyme Property Owners Association, Inc. v. Town of Old

Lyme*, 539 F. Supp. 2d 547 (D. Conn. 2008) provides helpful guidance.  In that case, the

plaintiffs challenged the town's amendments to and enforcement of a zoning ordinance that

interfered with the plaintiffs' use of their property.  *Id.* at 557.  The town argued that the

plaintiffs' claims under the Equal Protection and Takings Clauses were time-barred.  The court

disagreed, determining that, if the regulations were constitutionally invalid, "then the

Regulations 'would constitute the equivalent of a continuing invasion of plaintiffs' property

rights akin to a continuing trespass—a situation in which a new cause of action arises in

plaintiff's favor against . . . [the defendant] each day.'" *Id.* (quoting *Green v. Town of Blooming

Grove*, No 87-cv-69, 1988 WL 126877 (S.D.N.Y. Nov. 21, 1988), *aff'd in part, rev'd in part*,

879 F.2d 1061 (2d Cir. 1989)) (second alteration in original).  Similarly, in *Town of Southold v.

Town of East Hampton*, 406 F. Supp. 2d 227, 238 (E.D.N.Y. 2005), *aff'd in part and vacated in

part on other grounds*, 477 F.3d 38 (2d Cir. 2007), the court held that a challenge to a law that

prevented the plaintiff from establishing a ferry service constituted a continuing violation.

Although this case does not involve the enactment of a new law, the Town's stop work order and ban on Plaintiffs' dogs absent a special kennel permit likewise interfered with plaintiff's use of their property on an ongoing basis. Each day, the Town's enforcement of the stop work order and the special kennel permit requirement prevented Plaintiffs from using their land as they wanted to. The issuance of the stop work order was a single, discrete act, but courts in this circuit have rejected that same argument regarding the discrete nature of enacting a zoning ordinance. *See South Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp.2d 547, 557 (D. Conn. 2008). Likening the enactment of a law to a "continuing trespass," as prior cases have, illuminates the issue: if a company constructed a building that encroached on a plaintiff's land, the company would be liable for trespass each day even though the "discrete" act of constructing the building resulted in each of those trespasses. Here, too, the discrete act of issuing the stop work order results in an alleged new violation by the Town each day. This conclusion aligns with the Second Circuit's reasoning in *Sant v. Stephens*, 821 F. App'x 42 (2d Cir. 2020), where the court concluded that the complaint alleged "one act that is fairly described as a continuing violation: Plaintiffs applied for a zoning variance in 2009, but the Town never granted the variance." *Id.* at 45.

Because the stop work order and the ban on Plaintiffs' additional dogs remained in effect until well within the statute of limitations period and because Plaintiffs' allege that they submitted numerous complaints about these issues to Town Board members, including as recently as September 2022, the court can reasonably infer that Town decisionmakers were aware of and continued to enforce the allegedly unconstitutional stop-work order and ban on Plaintiffs' additional dogs within the statute of limitations period. (*See* Doc. 1-1 ¶¶ 102, 104, 106, 112, 155.) Because Town decisionmakers were "consciously aware" of the unconstitutional

27

acts yet "consciously chose to ignore them" on occasions falling within the statute of limitations, the Plaintiffs' cause of action is not time barred. *Amnesty Am.*, 361 F.3d at 126.

### 4.    Exhaustion of Administrative Remedies

As discussed above, a plaintiff typically need not exhaust administrative remedies before filing suit under § 1983. *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 479 (2021). Plaintiffs' substantive due process claim falls within that general rule. *See Morello v. James*, 810 F.2d 344, 348 (2d Cir. 1987) (availability of adequate state law remedy does not foreclose a § 1983 substantive due process claim); *see also Curro v. Watson*, 884 F. Supp. 708, 716 (E.D.N.Y. 1995) ("[A]ctions which violate a *substantive* right under either the Bill of Rights or the Due Process Clause will give rise to a federal civil rights action regardless of the existence of a state remedy.").

The Town's Motion to Dismiss is DENIED with respect to this claim.

### E.    First Amendment Retaliation

Although the Complaint does not cite to the First Amendment, Defendants posit in the Motion to Dismiss that a "broad reading of the Complaint suggests [a First Amendment retaliation claim] may be taken from the contents." (Doc. 7-1 at 33.) Defendants specifically reference the First Amendment's protection of a citizen's right to seek judicial relief. (*Id.* (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)).)

To state a claim for retaliation under the First Amendment, a plaintiff must allege that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024). The Complaint does not support this claim. To the extent that Plaintiffs invoked their right to petition the government by

submitting complaints to Town Supervisor Lorrie Fisher, filing FOIL requests, or sending letters to the Town Board to draw attention to their grievances, the facts do not support the inference that the Town's alleged conduct was in retaliation for those complaints. Rather, the thrust of the Complaint is that Franklinville is an old boy's club, that the Farringtons used their power in the town's government to vindicate the personal vendetta of their friends, the Fantrazzos, and that other members of the Town government, including Town Supervisor Lorrie Fisher, joined in the Farringtons' campaign.

To the extent that the Complaint raises a claim of First Amendment retaliation, the court GRANTS the Motion to Dismiss on this claim.

### F.    Obstruction of Mail

The Complaint includes a cause of action for violation of 18 U.S.C. § 1701, concerning the obstruction of mail. The cause of action arises from Plaintiffs' allegation that Kay Farrington called the U.S. Postal Service and reported that Plaintiffs had dangerous dogs on their property, which resulted in an interruption of their mail service. (Doc. 1-1 ¶ 32.)

Section 1701 of Title 18 is a criminal statute. It does not create a private right of action. *See Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 103 n.7 (2d Cir. 1981) (concurring with district court's conclusion that section 1701 did not create a private right of action). The Motion to Dismiss is GRANTED on this claim.

## IV.    State Causes of Action

### A.    Negligence

"A plaintiff bringing a negligence action must allege a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom." *Nellenback v. Madison County*, --- N.E.3d ----, 2025 WL 1127776, at *3 (N.Y. 2025) (internal quotation marks

and citation omitted). In this case, the Town argues that Plaintiffs have failed to clear the first

hurdle of plausibly pleading that the Town owed Plaintiffs a duty. Plaintiffs maintain that the

Town owed them a duty "to protect their interactions with the Town employees and agents from

bad acts, illegal acts, [and] malfeasance" and that the Town "breached its duty by engaging in

bad acts, illegal acts, malfeasance and denying Plaintiffs['] rights for fair practices in the

issuance of property permits and approvals." (Doc. 1-1 ¶¶ 146–47.)

Under New York law, to state a claim for negligence against a municipality, a plaintiff

must allege that the municipality owed them a special duty beyond that owed to the general

public. *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 316, 194 N.E.3d 239, 252 (2022). This

requirement applies to all negligence actions against a governmental defendant, whether the

claim is based on failure to protect or on affirmative malfeasance by government employees. *Id.*

"The New York Court of Appeals has specified that a special duty can arise in three situations:

'(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government

entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally;

or (3) the municipality took control of a known and dangerous safety condition.'" *Ferreira v.*

*City of Binghamton*, 975 F.3d 255, 281 (2d Cir. 2020) (quoting *Applewhite v. Accuhealth, Inc.*,

21 N.Y.3d 420, 995 N.E.2d 131, 135 (2013)).

Plaintiffs have made no allegations that would support the finding of a special duty in this

case. They have not pointed to a particular statute that would give rise to a duty, there is no

indication that the Town voluntarily assumed a duty to Plaintiffs, and this case does not concern

dangerous safety conditions. In the absence of some allegation by Plaintiffs regarding a special

duty owed to them by the Town or an argument to that effect in their briefing, they have failed to

state a claim for negligence.

The Motion to Dismiss is GRANTED as to this cause of action.

**B.        Negligent Hiring, Training, Retention, and Supervision**

Plaintiffs seek to hold the Town liable for negligently hiring, training, retaining, and supervising the Town employees involved in the misconduct alleged in the Complaint.  They contend that the Town had actual or constructive knowledge of the employees' propensity for the type of behavior that resulted in Plaintiffs' harm and that the Town had the ability to control those employees but failed to do so.

Focusing on only the negligent *hiring* component of this claim, the Town argues that the claim is time-barred, that Plaintiffs failed to file a timely notice of claim, and that Plaintiffs failed to allege facts regarding the "negligent hiring itself or notice of prior tortious actions by the Farrington[s] . . . before their employment."  (Doc. 7-1 at 12–13.)

With respect to the negligent hiring component of this cause of action, the court agrees with the Town that Plaintiffs have not alleged any facts demonstrating that the Town knew or had reason to know about the Farringtons' propensity to commit tortious acts when it hired them.  Indeed, the Complaint does not allege any facts regarding the time period before the Farringtons were hired.  Plaintiffs have therefore necessarily failed to state a claim on their negligent hiring claim.

Although the Town does not address whether Plaintiffs have stated a claim regarding the negligent supervision and retention component of this claim, the Town *does* challenge the claim on the basis that it is time barred and that Plaintiffs failed to timely file a notice of claim.

Under New York law, the statute of limitations for a tort claim against a town is one year and 90 days.  N.Y. Town Law § 67; N.Y. Gen. Mun. Law § 50-i(1).  Because Plaintiffs filed

their Complaint on December 7, 2023, their negligent supervision and retention claim must have accrued on or after September 8, 2022.

Although the Complaint does not specify which employees the Town negligently supervised and retained, it is clear that the Complaint has in mind the Farringtons, Ginger Schroder, and Lorrie Fisher. Because the tort of negligent supervision and retention includes as one of its elements an underlying tort by the negligently supervised employee, *see Moore Charitable Foundation v. PJT Partners, Inc.*, 40 N.Y.3d 150, 217 N.E.3d 8, 14 (2023), the Complaint must allege some tortious act by these parties within the statutory period. *See Elliott v. City of New York*, 723 F. Supp. 3d 249, 262 (S.D.N.Y. 2024) (plaintiff failed to establish that the continuing violation doctrine applied to his negligent hiring, training, and supervision claim where he failed to allege "any discriminatory act against him, resulting from th[is] polic[y] and practice[], that did occur within the statute of limitations, so that his claim would not be time-barred" (internal quotation marks and citation omitted)). The only two allegations regarding these parties after September 2022 are Plaintiffs' allegations that the Farringtons trespassed on their land in November 2022 (Doc. 1-1 ¶ 125) and that Kay Farrington drove down a road that bordered Plaintiffs' property in a Town van and honked the horn in December 2022 (*id.* ¶ 128). The latter allegation is not a tort. The former, though tortious, is not accompanied by any allegation suggesting that the Farringtons could only commit the tort because of their status as Town employees, as required to state a claim for negligent supervision or retention under New York Law. *Moore*, 217 N.E.3d at 14. Plaintiffs have therefore failed to allege any facts within the statute of limitations that would support their claim for negligent supervision and retention.

For the foregoing reasons, the Motion to Dismiss is GRANTED with respect to this claim.

### C.    Negligent Infliction of Emotional Distress

"Under New York law, a plaintiff may establish . . . a claim [of negligent infliction of emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).  To make out a claim under the bystander theory, a plaintiff must allege that "she [was] threatened with physical harm as a result of defendant's negligence; and . . . consequently she suffer[ed] emotional injury from witnessing the death or serious bodily injury of a member of [their] immediate family." *Id.*; *see also Bovsun v. Sanperi*, 61 N.Y.2d 219, 461 N.E.2d 843, 844 (N.Y. 1984).  "Under the 'direct duty' theory a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise*, 102 F.3d at 696.

The Town argues that Plaintiffs have failed to allege facts that would support this cause of action.  The court agrees.  Regarding the bystander theory, the Complaint does not allege that any member of Plaintiffs' family died or suffered serious bodily injury.  As for the direct duty theory, the Complaint likewise contains no allegations that any Town employee placed Plaintiffs' physical safety in danger.  The only allegation regarding possible physical harm to the Masics involved Derek Dallas—a friend of the Farringtons but notably not a Town employee— almost running over Mr. Masic with his car.  (Doc. 1-1 ¶ 118.)  That allegation cannot be the basis for holding the *Town* liable.

The Motion to Dismiss is GRANTED with respect to Plaintiffs' claim for negligent infliction of emotional distress.

### D.    Harassment Under Penal Law § 240.26

Plaintiffs assert a cause of action against the Town for "harassment in the second degree" under N.Y. Penal Law § 240.26.  (Doc. 1-1 at 42.)  They also bring a cause of action for "aiding and abetting" harassment in the second degree under § 240.26.  (*Id.* at 43.)

Section 240.26 is a criminal statute.  "Whether a private right of action should be implied from a statute which on its face provides only for penal sanctions depends upon the intent of the statute."  *Hammer v. Am. Kennel Club*, 758 N.Y.S.2d 276, 280 (N.Y. App. Div. 2003) (cleaned up) (emphasis omitted).  New York courts apply a three-part test to determine whether a criminal statute gives rise to a private right of action:

> Where a statute does not explicitly provide for a private cause of action, such a right may only be implied where three factors are established: (1) plaintiff must be one of the class for whose benefit the statute was enacted; (2) recognition of a private right of action must promote the legislative purpose; and (3) creation of such a right must be consistent with the legislative scheme.

*Id.* (emphasis omitted).

At least one New York court has already found that § 240.26 does not create a private right of action.  *See Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 16 N.Y.S.3d 753, 753–54 (N.Y. App. Div. 2015).  Another New York court rejected a plaintiff's attempts to seek recovery for harassment, stating that "New York does not recognize a common-law cause of action for harassment" and referring to the plaintiff's citation to Penal Law § 240.26 as "entirely misplaced."  *Platsky v. Yahoo! Inc.*, 66 N.Y.S.3d 654, 654 (N.Y. App. Term. 2017) (per curiam); *see also Edelstein v. Farber*, 811 N.Y.S.2d 358, 358 (N.Y. App. Div. 2006) ("New York does not recognize a common-law cause of action for harassment.").

Plaintiffs have pointed to no contrary authority supporting their claim that § 240.26 creates a private right of action, and the court has found none. The Motion to Dismiss is therefore GRANTED with respect to the two claims arising under N.Y. Penal Law § 240.26.

### E.    Breach of Fiduciary Duty

Plaintiffs assert a cause of action against the Town for breach of fiduciary duty on the theory that the Town has a fiduciary duty to and a special relationship with its residents to enforce its zoning laws and codes "in a way that maintains the fair public discourse and operational mechanism between the resident in need of such services and the municipality." (Doc. 1-1 ¶ 181.)

"In New York, a fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (quoting *Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735 (N.Y. 2012)). The "[e]ssential elements of a fiduciary relation are reliance, de facto control and dominance." *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 896 N.E.2d 61, 68 (N.Y. 2008) (cleaned up). The Court of Appeals of New York has described a fiduciary as arising when one party is so dependent on the other that they are "incapable of self-protection regarding the matter at issue." *Marmelstein v. Kehillat New Hempstead*, 892 N.E.2d 375, 379 (N.Y. 2008).

The Town argues that it owed no such duty to Plaintiffs with respect to the enforcement of its zoning laws and the advice it provided on those laws. (Doc. 7-1 at 28–29.) The court agrees. Even accepting the facts alleged in the Complaint as true, the Masics were not incapable of determining and acting to advance their own best interests. Town employees may have engaged in misconduct, and a municipality should, generally speaking, act in the interest of its

35

residents, but those facts alone do not create a fiduciary relationship.  The interests of residents often conflict.  If a municipality owed a general fiduciary duty to its resident with respect to the enactment and enforcement of all of its laws, it would inevitably violate its fiduciary duty with respect to some residents every time it acted.

Plaintiffs have not cited any authority to support the viability of their breach of fiduciary duty claim.  The court therefore GRANTS the Motion to Dismiss with respect to this claim.

F.    **Trespass**

Plaintiffs bring a claim of trespass against the Town, citing the instances when Town employees "entered onto the Plaintiffs' property . . . without justification and without permission."  (Doc. 1-1 ¶ 186.)  Defendants argue that Plaintiffs have failed to state a claim because those Town employees were not acting within the scope of their employment during the trespasses that occurred within the statute of limitations.

As noted above, the statute of limitations for a tort claim against a town is one year and 90 days.  N.Y. Town Law § 67; N.Y. Gen. Mun. Law § 50-i(1).  Because Plaintiffs cannot invoke the continuing violation doctrine for their trespass claim, the court will therefore consider only acts alleged to have occurred after September 8, 2022.

Under New York law, "a municipality may be held vicariously liable for . . . acts committed by its employes . . . while acting in the scope of their employment."  *Owens v. City of New York*, 124 N.Y.S.3d 695, 698 (N.Y. App. Div. 2020); *see also Lepore v. Town of Greenburgh*, 992 N.Y.S.2d 329, 332 (N.Y. App. Div. 2014) ("[M]unicipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees.").  "An employee's actions fall within the scope of employment where the purpose in performing such actions is to

36

further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Brown v. Lyft, Inc.*, 194 N.Y.S.3d 85, 88 (N.Y. App. Div. 2023) (internal quotation marks and citation omitted). "Where an employee's actions are taken for wholly personal reasons, which are not job related, the challenged conduct cannot be said to fall within the scope of employment." *Id.* (cleaned up).

The only instance of trespass by Town employees that Plaintiffs allege after September 8, 2022, occurred in November 2022.[1] (Doc. 1-1 ¶ 125.) Plaintiffs allege only that Lonnie and Kay Farrington "parked on a seasonal road . . . with one side owned by the Masics," and that, when the Masics approached, they "observed Lonnie and Kay running to their car from trespassing on the Masics land." (*Id.*) Plaintiffs provide no further context regarding the incident. Without more, Plaintiffs have not plausibly pled that the Farringtons were acting within the scope of their employment when they trespassed on Plaintiffs property in November 2022. They have therefore failed to state a claim for trespass against the Town, and the court will GRANT the Motion to Dismiss on this cause of action.

### Conclusion

The Motion to Dismiss (Doc. 7) is DENIED with respect to Plaintiffs' claims for violation of the federal and New York State Equal Protection Clauses and violation of federal substantive due process. The Motion to Dismiss is otherwise GRANTED.

---

[1] The Complaint also alleges that the Kay Farrington drove by the Masics' property in a Town van honking her horn loudly in December 2022, but that does not amount to trespass. (Doc. 1-1 ¶ 128.)

Plaintiffs' Motion to Remand (Doc. 10) is DENIED, and their Motion to Amend the

Complaint (Doc. 10) is DENIED WITHOUT PREJUDICE.  Plaintiffs' Motion to File a Late

Notice of Claim (Doc. 10) is MOOT.

Dated this 27th day of August, 2025.

Geoffrey W. Crawford, Judge
United States District Court