**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

MARIO MASIC and BETHANY MASIC,

Plaintiffs,                                                     Case No.: 1:24-cv-00018-GWC

v.

TOWN OF FRANKLINVILLE, NEW YORK,

Defendants.

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c)**

To: HANCOCK ESTABROOK, LLP

Ashley D. Hayes, Esq.
Frank W. Miller, Esq.
Attorneys for Defendant Town of Franklinville
1800 AXA Tower 1, 100 Madison Street
Syracuse, NY 13202
(315) 565-4563
ahayes@hancocklaw.com
fmiller@hancocklaw.com

From: LAW OFFICE OF RICK S. GEIGER, LLC
Rick S. Geiger, Esq.
Attorneys for Plaintiffs
919 South Winton Rd., Suite 202
Rochester, New York 14618
(585) 230-5511
rsgeiger@geigerlawfirm.com

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 5

ARGUMENT ........................................................................................... 6

I. PLAINTIFFS' MOTION TO AMEND IS TIMELY, MADE IN GOOD FAITH, AND WILL NOT CAUSE UNDUE PREJUDICE ............................................. 6

II. THE PROPOSED AMENDMENTS ARE NOT FUTILE .................................... 7

  A. The Statute of Limitations Does Not Bar the Claims; the Continuing Violation Doctrine Applies and Relation Back Is Proper ............................... 7

  B. Claims Against the Proposed Individual Defendants Are Not Futile ............ 9

  C. The Proposed Procedural Due Process, Unreasonable Search, IIED, Abuse of Process, and Defamation Claims Are Not Futile ......................... 10

  D. Notice of Claim Requirements Do Not Render Amendments Futile ............ 13

III. DEFENDANT'S CROSS-MOTION TO DISMISS UNDER RULE 12(c) SHOULD BE DENIED ...................................................................... 14

CONCLUSION ................................................................................. 14

## TABLE OF AUTHORITIES

Cases

Arizona v Hicks        480 U.S. 321                                                10

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................... 7

*Andrews v. Town of Wallingford, 2017 U.S. Dist. LEXIS*

*133486 (D. Conn., Aug. 21, 2017)*                                                 *8*

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................... 7

Board of Education v Farmingdale    38 N.Y.2d 397                                   10

Choi v. Tower Research Capital LLC, 2 F.4th 10 (2d Cir. 2021) ............................. 7

Corrado v. N.Y. Unified Court Sys., 163 F. Supp. 3d 1 (E.D.N.Y. 2016) ................... 8, 9

Cuoco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000) ......................................... 7

Curicano v Suozzi 63 N.Y.2d 113                                                    10

Decarolis vs Town of Vienna  322 Fed. Appx. 25  2009                               14

Eckert v. City of Buffalo, No. 22-CV-540-LJV, 2025 WL 2836547 (W.D.N.Y. Oct. 6, 2025) .............................................................. 14

Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132 (2d Cir. 2018) ...... 7

Fish v. Tom's of Maine, Inc., 705 F. Supp. 3d 72 (N.D.N.Y. 2023) .......................... 6

Galbraith v. City of Buffalo, 811 F. Supp. 3d 422 (W.D.N.Y. 2025) ........................ 7

Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015) ........................................ 8

Hardy v NYC Health Hospital Hosp. Corp.   164 F.3d 789  1999                        13

Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999) ........................................ 7

In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147 (2d Cir. 2021) .................... 7

Kyllo v United States 533 U.S. 27 2001                                             10

MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77 (2d Cir. 2023) .............................................................................. 2

Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)                            6,9

Rene v Town of Greece 2024 U.S. Dist. LEXIS 215331                                 14

AMTRAK/Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) ...................... 7

Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009) .......................................... 8

Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) ...................................... 7,8

Stuto v Fleishman     164 F.3d 820   1999                                       10

Washington v County of Rockland    373 F.3d 310   2004                           8

## Statutes & Rules

42 U.S.C. § 1983 .............................................................................. 9,13

Fed. R. Civ. P. 15(a)(2), (c) .................................................... 6,14

Fed. R. Civ. P. 12(b)(6), 12(c) ..................................................... 5.6.7.14

**PRELIMINARY STATEMENT**

Plaintiffs Mario and Bethany Masic respectfully submit this reply in further support of their timely Motion for Leave to File First Amended Complaint (Dkt. 28) and in opposition to Defendant Town of Franklinville's Cross-Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c). Defendant's opposition (Dkt. 32) recycles arguments this Court already rejected in its August 27, 2025 Order (Dkt. 19), misapplies the continuing violation doctrine and relation-back rules, and ignores that the proposed amendments respond directly to that Order, fall squarely within the Court-ordered March 15, 2026 deadline for amendments and joinder, and are supported by the same factual allegations the Court found sufficient to state plausible Equal Protection and substantive due process claims under both federal and New York State law.  And we note here that post filing of the Complaint, Franklinville continued its policy abuse of process and denial of constitutional rights to the Masics. **See Appendix C**

Defendant's attempt to relitigate the statute of limitations through a "law of the case" exception is unavailing. The Court expressly held that the continuing violation doctrine applies because the stop-work order and effective ban on Plaintiffs' dogs constitute ongoing deprivations that continued into the limitations period. (Dkt. 19.) That ruling binds the Town. For the newly proposed individual defendants—former Town officials whose personal involvement the Court already detailed—relation back under Rule 15(c) is proper because the claims arise from the identical conduct, the Town (their employer and the real party in interest) had full notice from the outset, and no prejudice exists.

The proposed new state-law claims (intentional infliction of emotional distress, abuse of process, and defamation) are not futile; they are pleaded with particularity, arise from the same core facts, and satisfy Rule 8 and Rule 12(b)(6) standards. Federal constitutional claims require no notice of

5

claim; the state claims are covered by the timely 2019 and 2022 Notices of Claim and 50-h hearings already conducted. Defendant's cross-motion under Rule 12(c) is equally meritless—the standard is identical to Rule 12(b)(6), and this Court has already upheld the core claims as plausible. Leave to amend should be granted freely under Rule 15(a)(2) because justice so requires, the motion is timely, there is no bad faith or undue prejudice, and the amendments are not futile. Defendant's cross-motion should be denied in its entirety.

**ARGUMENT**
**I. PLAINTIFFS' MOTION TO AMEND IS TIMELY, MADE IN GOOD FAITH, AND WILL NOT CAUSE UNDUE PREJUDICE**
The Stipulated Discovery Schedule (Dkt. 21) set March 15, 2026 as the deadline for motions to amend and join parties. Plaintiffs' motion was filed on March 4, 2026—well within the deadline. This alone triggers the liberal Rule 15(a)(2) standard. *See Fish v. Tom's of Maine, Inc., 705 F. Supp. 3d 72, 82 (N.D.N.Y. 2023).*

The amendments are made in direct response to the Court's August 27, 2025 Order: they eliminate dismissed claims, streamline the surviving Equal Protection and substantive due process claims (both federal and state), add the individual defendants whose personal involvement the Court specifically found sufficient to support municipal liability under *Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)* , and add narrowly tailored state-law claims supported by the extensive factual record already before the Court. There is no dilatory motive or bad faith.

Defendant will suffer no undue prejudice. Discovery is in its earliest stages (initial disclosures due December 31, 2025; fact discovery not complete until November 1, 2026). The underlying facts have been known to the Town since 2017–2022; the individual defendants were Town employees and officials whose conduct was extensively discussed in the Court's prior Order.

6

Adding them requires no new discovery of substance. Eliminating dismissed claims will actually narrow the case. Mere delay in seeking amendment does not constitute prejudice, and Defendant bears the burden of showing prejudice—which it has not done. See *MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 90 (2d Cir. 2023); Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018).*

## II. THE PROPOSED AMENDMENTS ARE NOT FUTILE

An amendment is futile only if the proposed pleading would fail to state a claim under Rule 12(b)(6). *In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021); Galbraith v. City of Buffalo, 811 F. Supp. 3d 422, 454 (W.D.N.Y. 2025)* (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). The proposed First Amended Complaint easily meets this standard.

### A. The Statute of Limitations Does Not Bar the Claims; the Continuing Violation Doctrine Applies and Relation Back Is Proper

Defendant asks this Court to revisit its August 27, 2025 ruling that the continuing violation doctrine saves Plaintiffs' substantive due process claim because the stop-work order and dog ban constitute ongoing deprivations. That request should be denied.

**Law of the case binds the Town**. The doctrine "is not a commandment etched in stone," but a court may reconsider only for "cogent and compelling reasons" such as clear error or manifest injustice. *Choi v. Tower Research Capital LLC, 2 F.4th 10, 21 (2d Cir. 2021)*. No such reason exists here. Defendant's cited cases (Singleton, Harris, Gonzalez, AMTRAK Nat'l R.R. Passenger Corp. v. Morgan 536 US 101) confirm that the doctrine applies to "a series of separate acts that

7

collectively constitute one unlawful practice" where the claim "accrue[s] only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty, 802 F.3d 212, 220* (2d Cir. 2015) (quoting *Washington v. Cty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004)).* The ongoing stop-work order (issued April 2018 and still in effect at filing) and effective ban on dogs are precisely such a continuing deprivation of vested property rights in agricultural use— exactly as this Court held.

The discrete-act cases Defendant cites (Andrews v. Town of Wallingford, Higgins, Santucci, Massari) are inapposite. Those involved one-time enforcement orders or denials whose effects lingered; here the deprivation itself (inability to use the barn or keep dogs on the property) continues daily. See *Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) Shomo v. City of New York, 2009 U.S. App. LEXIS 23076* (persistence of municipal policy plus non-time-barred acts showing acquiescence supports continuing violation). Plaintiffs were not required to file suit the moment the first citation issued in 2017 while the Town's campaign was still unfolding; the doctrine prevents precisely that resuscitation of stale claims trap Defendant invokes. *Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).*

Even if any claim were arguably time-barred against the Town, the proposed amendments relate back under Rule 15(c)(1)(B) and (C). The new claims and parties arise out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). For the individual defendants, the Town "knew or should have known that the action would have been brought against it" but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C); see also *Corrado v. N.Y. Unified Court Sys., 163 F. Supp. 3d 1, 19 (E.D.N.Y. 2016).* The individuals are former Town officials whose conduct was the very

8

basis of the original complaint and the Court's prior Order; the Town has defended them from day one. No prejudice exists.

For the individual defendants, the motion-to-amend filing date (March 4, 2026) does not start a new limitations clock because relation back applies. Defendant's argument that no acts occurred after March 2023 (or March 2025 for state torts) ignores that the continuing effects of the 2018 stop-work order and the ongoing campaign (including 2022 citations and post-resignation harassment) fall within any properly related-back period.

**B. Claims Against the Proposed Individual Defendants Are Not Futile**

The Court already found that Town Supervisor Lorrie Fisher was a final policymaker whose personal participation established *Monell* liability, and that Lonnie and Kay Farrington personally engaged in the selective enforcement and harassment campaign. Adding them as defendants simply identifies the specific constitutional tortfeasors the Court has already found plausibly liable. Individual-capacity § 1983 liability requires only personal involvement—which is amply pleaded. See 42 U.S.C. § 1983; see also the factual allegations in the Proposed Amended Complaint at ¶¶ 25–73 (trespass, citations, stop-work order, panic buttons, assessment inflation, public defamation, etc.).

Qualified immunity is not a basis for denying amendment at this stage; the facts alleged (warrantless trespass onto curtilage, gun-gesture threat, deliberate targeting while ignoring identical conduct by others) violate clearly established law. The individuals had notice through their employment and the Town's defense; relation back is proper. *Corrado, 163 F. Supp. 3d at 19.*

**C. The Proposed Procedural Due Process, Unreasonable Search, IIED, Abuse of Process, and Defamation Claims Are Not Futile**

**Procedural Due Process**: The Proposed Amended Complaint strengthens the allegations that Plaintiffs were deprived of a protected property interest (agricultural use of land and certificate of occupancy) without adequate process. The Court previously dismissed the original formulation without prejudice; the new pleading cures any deficiency by detailing the arbitrary conditions placed on the C of O and the lack of any meaningful hearing.

**Unreasonable Search (Fourth Amendment)**: Lonnie Farrington's December 7, 2017, entry onto Plaintiffs' property at 7906 Tug Hill Road—after Mario expressly forbade it—constitutes a warrantless trespass onto curtilage without consent, exigency, or any other exception. See *Arizona v. Hicks, 480 U.S. 321 (1987); Kyllo v. United States, 533 U.S. 27 (2001)*. The Proposed Amended Complaint pleads these facts with particularity.

Intentional Infliction of Emotional Distress: The conduct alleged—Kay Farrington pointing her finger like a gun at Bethany and "shooting," installation of panic buttons to portray Mario as a "monster," directing the assessor to "tax him to death," years of stalking/surveillance, public newspaper attacks calling Mario a "corrupt and racist" police officer running an "illegal kennel," and continued post-resignation harassment—is extreme and outrageous as a matter of law. See *Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)*. The claim is timely under the continuing violation theory and/or because the last acts occurred within one year of the 2022 Notices of Claim.

**Abuse of Process**: The stop-work order, backdated citations, excessive inspections (19 vs. average of 6), and criminal-style enforcement were used for the improper purpose of driving Plaintiffs out of town, not for any legitimate regulatory goal. See *Board of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397 (1975)*; *Curiano v. Suozzi, 63 N.Y.2d 113 (1984)*. The Proposed Amended Complaint pleads the required elements with specificity.  Furthermore,

10

Defendant, after relieving the Farringtons of their government jobs, in fact rehired them**.** The note in the appendix states there was an investigation into the wrongdoing with the Masics, and as of yet, the notes for that investigation have not been delivered via FOIL or discovery. And we note here that the son of the Farringtons represented Lonnie and Kay in their negotiated settlement with the Town of Franklinville where Cathyrn Campell approved the settlement and she is the live in partner of the son of the Farringtons.    **See Appendix B**

**Evidence of Selective Enforcement and Malicious Intent**: Plaintiff could literally list scores, maybe hundreds of examples of abuse of process and selective intent, but that is what discovery is for. But we note a few here:

Plaintiffs allege that on or about April 22, 2018, Town Attorney Ginger Schroder sent a text message to Franklinville resident Julie Storts, who had more than four dogs, warning her: "HEADS UP, DID NOT HEAR THIS FROM ME, WE HAVE A PROBLEM GUY DOG BREEDER IN FRANKLINVILLE. AS A RESULT THEY WILL BE CRACKING DOWN ON ALL PERSONS WITH DOGS REQUIRING LICENSING SO IT WILL NOT BE DISCRIMINATORY IF THEY GO AFTER HIM." **See Appendix A**.  Plaintiffs allege this text demonstrates the Town's conscious awareness that its enforcement against Plaintiffs was discriminatory and its attempt to manufacture a pretext of uniform enforcement.

Plaintiffs allege that the Farringtons also texted Storts suggesting she get a special kennel permit even though it was not required. Plaintiffs allege that unlike Plaintiffs, when Storts refused to get a special kennel permit, she did not receive a ticket, despite having eight licensed dogs. Plaintiffs allege that Kim Chase, a dog breeder in Franklinville with over thirty dogs, informed Plaintiffs that she had never heard of or obtained a special kennel permit. Plaintiffs

allege that when Town Supervisor Fisher later suggested Ms. Chase get a special kennel permit, Ms. Chase refused because she knew it was unnecessary, and she did not receive a ticket.

Plaintiffs allege that a FOIL request revealed that numerous Franklinville residents had four or more licensed dogs, but not one special kennel permit had ever been issued or requested in the Town. Plaintiffs allege that despite this, on or about May 1, 2018, they received a citation backdated to July 2017 for an unpermitted kennel, even though all their dogs were licensed and they had moved four dogs to Machias, leaving only three in Franklinville.

Plaintiffs allege that on or about April 26, 2018, two New York State Troopers, two code enforcement officers (including Lonnie Farrington), and Town Supervisor Fisher attempted to stop repair work on Plaintiffs' agricultural barn at 7906 Tug Hill Road. Plaintiffs allege that Fisher issued a stop work order at 7823 Tug Hill Road alleging non-compliance, despite the buildings being agricultural and exempt from standard building codes. Plaintiffs allege this stop work order remained in effect at least until the filing of the original Complaint on December 7, 2023, and that Fisher was personally present and involved in issuing this order.

Plaintiffs allege that Town Supervisor Fisher visited several of Plaintiffs' neighbors to inquire whether Plaintiffs' dogs bothered them in an attempt to solicit complaints against Plaintiffs. Plaintiffs allege that neighbors reported that Fisher and Farrington were trying to get neighbors to sign a petition against Plaintiffs. Plaintiffs allege that while Town employees repeatedly told Plaintiffs they needed a permit to build their barn, no Town officials told resident Wallie Miller to get a permit for his barn until Plaintiffs submitted a FOIL request regarding Mr. Miller's property.

12

Plaintiffs allege that during construction of their home, Lonnie Farrington required at least 19 inspections, compared to an average of six inspections for other homes built by the same builder, Twin Lakes (owned by Kody Sprague). Plaintiffs allege that Sprague stated he had never experienced such delays and was certain the Town was deliberately harassing the Masics. Plaintiffs allege that Sprague also reported that Kay Farrington was attempting to deny permits for Plaintiffs' septic tanks despite having no authority to do so.

Plaintiffs allege that Lonnie Farrington attempted to delay Plaintiffs' certificate of occupancy, withholding it for weeks after the home passed final inspection. Plaintiffs allege that Attorney Linda Joseph sent an email stating that if the Masics agreed to sign off and get a special kennel permit, their Certificate of Occupancy would be waiting for them, effectively conditioning the delivery of a lawfully earned certificate on Plaintiffs' submission to enforcement demands they believed were unlawful.

Plaintiffs allege that the Farringtons and Town Supervisor Fisher wrote disparaging articles about the Masics in the local newspaper (Mercury Gazette) stating that the Masics were not following the law, that Mario was a Rochester Police Officer running an illegal kennel, and other false information designed to damage Plaintiffs' reputation.

**Defamation**: Specific false statements of fact (Mario is a "corrupt and racist" officer; Plaintiffs operate an "illegal kennel"; Plaintiffs "do not follow the law") were published in the local newspaper and repeated to neighbors and officials. These are actionable statements of fact, not opinion, and were made with actual malice or at least negligence. CPLR 3016(a) particularity is satisfied. Any SOL argument fails for the same continuing-violation/relation-back reasons.

**D. Notice of Claim Requirements Do Not Render Amendments Futile**

13

Section 1983 claims require no notice of claim under New York law. See *Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999)*. For the pendent state claims, Plaintiffs filed timely Notices of Claim in September 2019 and September 2022, followed by 50-h hearings. The new claims (IIED, abuse of process, defamation) arise out of the identical facts and occurrences already noticed; substantial compliance is sufficient, and the Court has discretion to excuse technical defects in the interests of justice. See *DeCarolis v. Town of Vienna, 322 F. App'x 25 (2d Cir. 2009)*; *Rene v. Town of Greece, No. 6:24-CV-06208 EAW, 2024 WL 4905292 (W.D.N.Y. Nov. 26, 2024)*. Defendant cannot claim surprise.

## III. DEFENDANT'S CROSS-MOTION TO DISMISS UNDER RULE 12(c) SHOULD BE DENIED

The standard for a Rule 12(c) motion is identical to Rule 12(b)(6). *Eckert v. City of Buffalo, No. 22-CV-540-LJV, 2025 WL 2836547, at 8 (W.D.N.Y. Oct. 6, 2025).* This Court has already held that Plaintiffs' federal and state Equal Protection and substantive due process claims are plausible. (Dkt. 19.) The Town's answer does not change the factual allegations or the applicable standard. Reconsideration is unwarranted for the same reasons set forth above. Defendant's request to dismiss claims this Court has already sustained is an improper attempt to obtain a second bite at the apple.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Leave to File First Amended Complaint should be granted in its entirety. Defendant's Cross-Motion to Dismiss should be denied. The interests of justice, judicial economy, and the liberal amendment policy of Rule 15(a)(2) all compel this result.

Dated: May 6, 2026
Rochester, New York
Respectfully submitted,
LAW OFFICE OF RICK S. GEIGER, LLC
By: _____*rick geiger*_____
Rick S. Geiger, Esq.
Attorneys for Plaintiffs.   919 South Winton Rd., Suite 202 Rochester NY
585.230.5511   rsgeiger@geigerlawfirm.com

14

CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*rick geiger*

_____

Rick S. Geiger, Esq.

15

# Appendix A

# Schroder Cover Up





< 2

(716) 863-4000

ⓘ

:( I figured

Sucks

Heads up. Did not hear this from me. We have a problem guy dog breeder in franklinville. As a result they will be cracking down on all persons with dogs

requiring licensing so it will not be discriminatory if they go after him. If you have more than four dogs you have to get a kennel license. If I were yo

u I would do that this week so that they do not come to you first as you are on the list as having unlicensed dogs.

Sun, Apr 22, 11:58 AM

Oh thank you so much for letting me know!

Thu, Jun 7, 7:15 AM



Text Message


# Appendix B

# Reinstatement of Farringtons

Andrea Stanbro, Clerk

Terrance McClory, Councilman

Dave Furman, Councilman

DATE: April 9, 2024

RESOLUTION NUMBER: 47    YEAR: 2024

MOVED BY: Mr. McClory    SECOND BY: Mrs. Stevens

TITLE:    **Resolution approving agreement between Town of Franklinville and Lonnie Farrington and Kay Farrington**

**RESOLVED**, that Lonnie Farrington, Code Enforcement Officer and part-time Dog Control Officer and Kay Farrington, Dog Control Officer and part-time Assistant Town Code Enforcement Officer, are herewith reinstated to active duty. The Town has conducted an investigation of allegations made against employees Lonnie Farrington and Kay Farrington. The Town has concluded that those charges cannot be substantiated, and those employees are reinstated to active duty, and it is further

**RESOLVED**, that a certain agreement between the Town of Franklinville and Lonnie Farrington and Kay Farrington dated April 1, 2024, be and is hereby approved and the Town hereby accepts the resignation of Lonnie Farrington and Kay Farrington from their respective positions, effective April 30, 2024.

**RESOLVED**, the resolution as stated above is hereby adopted by a majority vote of the Town of Franklinville Town Board at an official meeting held on the ___9th___ day of ___April___ the year _2024_ the ayes and nays take and recorded below:

___Aye___    Catharyn Campbell, Supervisor

___Aye___    Sharon Hahn, Depu...

# Appendix C

Sawmill Issue

On May 7, 2025, I had a small 10x25 concrete pad poured flush with the ground at 7823.

Later that evening, around 8:00 p.m., a neighbor called me and said someone kept driving by both 7823 and 7906, stopping in front, and even pulling into the driveway.

I drove to 7823 and saw a van parked out front. I asked what was going on, and the man identified himself as the Town of Franklinville Code Enforcement Officer. He asked if I owned the concrete pad. I asked him if it was Illegal, and he said, "No, but it will be when you put a building on it." I told him he was there on assumptions and asked if he knew who I was. He said yes. I told him not to let the Town get him in trouble, that I have always been in compliance, and that I'm sure he had heard what the Town had done to me.

I asked him at least five times if he had received a complaint. Each time, he lied and said no—that he was just passing through Tug Hill Road. I told him I would FOIL request his phone records. At that point, he admitted that neighbor Gail Fantrazzo had called. He then changed his story and said she had called about the snow fence (which has been up for over five years for agricultural purposes). I asked if that was illegal. He said no. I told him that if I ever had something that required a permit, I would handle it appropriately. He acknowledged that he knew I operate a farm.

I also made an official complaint to him about Fantrazzo's property: their illegal large fence (built in 2018 without a permit), their pellet stove in the barn, and their completely finished barn and basement. I have made these complaints since early 2018 and have been ignored, while the Town continues to target me. He asked if my complaint was official. I told him yes. (I recorded this entire conversation.)

At the start of June, I placed my portable farm sawmill on the pad (it had been stored in my barn about 30 feet away for years). Before purchasing it, I confirmed with NYS Ag & Markets that I was completely legal and that Franklinville had no control over it.

On June 17, 2025, I received a letter dated June 10 stating I was not in compliance with the sawmill.

I then filed a FOIL request about the Fantrazzo property at 7843 to see if the Town had addressed my complaint. On June 30, Franklinville Town Clerk Stanbro replied that no documents existed. I asked if she was sure there were no tickets, etc. She then said she would check again. Later, she admitted there was one document: a letter dated June 30 to Fantrazzo.

This proves the Town acted within days to issue me an unlawful ticket, while still failing to act on my complaint about Fantrazzo's obvious noncompliance, in plain view, for years. We are once again being targeted and selectively enforced against us.

August 27 2025  kate t from nys ag and markets conducted a 305 review. Concurred with Bob somers that sawmill is part of the farm operations and opinions are already done on that. Stated we are in compliance and will put forward proper letters to the town stating so.

**STATE OF NEW YORK**
**COUNTY OF MONROE**
**ss.**

## AFFIDAVIT OF MARIO MASIC

I, MARIO MASIC, being duly sworn, depose and say as follows:

1.      That I have read the attached document pertaining to more ongoing and continuous harassment by the Town of Franklinville against me on this sawmill issue, and I hereby confirm the contents of said document as true and accurate to the best of my knowledge, information, and belief.

**FURTHER AFFIANT SAYETH NAUGHT.**

Dated: __5-5-26_____ , 2026

_____
Mario Masic
*Affiant*

### NOTARY ACKNOWLEDGMENT

**STATE OF NEW YORK**

**COUNTY OF MONROE**

**ss.**

On this __5__ day of ___MAY_____ , 2026, before me, the undersigned, personally appeared Mario Masic, proved to me through satisfactory evidence of identification, which were ___Krown to Me____ , to be the person whose name is signed on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public, State of New York
My Commission Expires: _____
[NOTARY SEAL]

RICK SCOTT GEIGER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02GE0004559
Qualified in Monroe County
Commission Expires 03/30/2027